1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

MACKENZIE T. MORGAN, ET AL., )

           **Plaintiffs,**    )

      **v.**          )

                 )

CAROLYN W. COLVIN, Acting )

Commissioner of Social Security, )

         **Defendant.**   )

_____

NO. 2:14-CV-06165- KS

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

On August 12, 2014, Mackenzie T. Morgan and C.V.M, a minor[1], through his guardian ad litem Gary D. Morgan ("Morgan"), filed a Complaint seeking judicial review of a decision by the Commissioner of Social Security denying their application for Child's Insurance Benefits ("CIB") following the death of their stepmother Dawn A. Bucks ("Bucks"). (Complaint, ECF No. 2.)   On the same date, the Court granted C.V.M.'s petition seeking Morgan's appointment as C.V.M's guardian ad litem. (ECF

---

[1] "C.V.M" refers to Connor V. Morgan.  (*See* A.R. at 5.)  Because Connor was a minor acting through his father, Gary Morgan, as guardian ad litem, the minor is identified in the caption only by his initials.

No. 1.)   On August 17, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  (Consents, ECF Nos. 26, 27.)   On November 23, 2015, Defendant filed an Answer to the Complaint and a Certified Administrative Record ("A.R."). (ECF Nos. 34, 35.)  On February 11, 2016, Mackenzie T. Morgan, Connor, and Morgan (together, "Plaintiffs"), through their respective counsel, filed a joint motion pursuant to Federal Rule of Civil Procedure 42(A), to consolidate the cases *Mackenzie T. Morgan et al., v. Carolyn W. Colvin*, Case No. CV-06165-KS and *Gary D. Morgan v. Carolyn W. Colvin,* CV-05905-KS. (ECF No. 38.)  In case number CV-05905, Morgan seeks Father's Insurance Benefits ("FIB"). On February 12, 2016, the Court granted the motion to consolidate the cases, ordering the two actions to continue as one case under case number CV 14-6165. (ECF No. 39.)

On April 26, 2016, the parties filed a Joint Stipulation ("Joint Stip."), whereby Plaintiffs seek an order reversing the Commissioner's decision that they are not eligible for CIB and FIB, and awarding survivors' benefits or, in the alternative, remanding the matter for further administrative proceedings, and Defendant seeks an order affirming the Commissioner's decision.  (Joint Stip., ECF No. 40).  The Court has taken the Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 31, 2011, Plaintiffs filed applications for CIB (Mackenzie and Connor) and FIB (Gary), following the death of Dawne Bucks on October 29, 2011. (A.R. 74; *see also* Joint Stip. at 2.)  The  Social Security Administration denied the Plaintiffs' applications for CIB and FIB initially and upon reconsideration, finding that

2

the "claimant had failed to establish that he had been married to [Bucks] for at least nine months prior to her death." (A.R. 78.)  On February 28, 2012, Plaintiffs requested a hearing before an Administrative Law Judge ("ALJ"). (A.R. 153-54.)  On September 24, 2012, a hearing was held before ALJ Sally Reason. (A.R. 216-32.)  Gary Morgan attended and testified at the hearing without representation.  (*Id.*)  Mackenzie and Connor did not attend the hearing.  (*Id.*)  On September 27, 2012, the ALJ issued an unfavorable decision denying Plaintiffs survivors' benefits.  (A.R. 74.)  Plaintiffs requested review of the ALJ's decision.  (A.R. 182.) The Appeals Council denied the request for review on May 16, 2014.  (A.R. 5-17.)    This timely appeal followed.

## SUMMARY OF ADMINISTRATIVE DECISION

### A.  The Morgan/Bucks Family History

Gary D. Morgan and Dawne A. Bucks were married on August 6, 2011. (A.R. 225.)  Bucks died of cancer on October 29, 2011.  (*Id.*) Mackenzie and Connor are Morgan's children by a prior marriage.[2]  (A.R. 218.)    Bucks was neither their biological nor adoptive parent.  (A.R. 221-22.) The couple had been married less than three months when Bucks died.  (A.R. 225.)  However, their family relationship began more than a year earlier.  In July 2010, Morgan and Bucks signed a Declaration of Domestic Partnership that Morgan submitted to the City of Los Angeles' Department of Fire and Police Pensions on or about July 28, 2010. (A.R. 140.)[3]  After Bucks' death, based on the domestic partnership declaration and their marriage a year later, Morgan applied for FIB and his children applied for CIB as Bucks' stepchildren. (A.R. 78.)    At the hearing, Morgan submitted additional documents concerning his

---

[2] Mackenzie was a minor at the time her application for CIB was filed, but she was 18 years old by the time of the hearing, and Connor was 15.  (A.R. 218.)

[3] Morgan retired from the Los Angeles Fire Department ("LAFD") in 2004. (A.R. at 223-24.)

and his children's claims, which the ALJ received as exhibits to be added to the record. (A.R. 230.)

At the outset of her decision, the ALJ noted that the record did not contain a copy of Gary's application for FIB, but she reasoned that "because the Social Security Administration has already made determinations on the issue of Mr. Morgan's entitlement to Father's Insurance Benefits, and because the issue of entitlement to such benefits is critical to a determination of whether surviving Child's Insurance Benefits can be paid to Mackenzie or Connor, the [ALJ] will proceed to the merits of this claim." (A.R. 78.)

Next, the ALJ identified the issues to be determined as "whether the claimants satisfy the criteria for eligibility for [FIB and CIB] benefits as specified in the Social Security Act as well as in Social Security Regulations 20 CFR 404.335, 404.339, 404.350, and 404.357." (A.R. 79.)

## B. Applicable Laws and Regulations

Social Security Act (the "Act") section 202(d) and 20 CFR 404.350 provides that a person is entitled to child's benefits on the earnings record of an insured person who has died if they "are the insured person's child, based upon a relationship described in §§ 404.355 through 404.359," are dependent on the insured as defined in the regulations, are unmarried, and are under age 18.  20 CFR 404.350 (a)(1)-(5).

Pursuant to Section 216(e) of the Act and 20 CFR 404.357, to be eligible for benefits as the insured's stepchild,  "the marriage between the insured and your parent must be a valid marriage under State law" and if the insured is not alive when you apply, *you must have been his or her stepchild for at least 9 months immediately*

*preceding the day the insured died*." 20 CFR 404.357 (emphasis added).  The 9-month requirement does not have to be met if the marriage lasted less than 9-months, and "at the time of [the marriage] the insured was reasonably expected to live for 9 months, and the death of the insured was accidental.  The death is accidental if it was caused by an event that the insured did not expect, [and] it was the result of bodily injuries received from violent and external causes[.]"  20 CFR 404.335.

A surviving spouse may be entitled to FIB on the earning record of a deceased insured if the "widower was married to the insured wage earner for at least nine months immediately before the insured wage earner died" or if one of the exceptions in 20 CFR 404.335(a) applies, i.e. the insured spouse was reasonably expected to live for nine months and her death was accidental.  20 CFR 335(a)(2)

## C. The ALJ's Analysis

After reviewing the documentary evidence and hearing testimony, the ALJ concluded that Morgan did not meet the criteria for entitlement to FIB and Mackenzie and Connor did not satisfy the criteria for entitlement to CIB as stepchildren. (A.R. 73.)  The ALJ based her conclusion on the fact that Morgan was not married to Bucks for nine months prior to her death, therefore, Mackenzie and Connor "were also clearly not the stepchildren of the insured wage earner for nine months prior to her death." (*Id.*)

The ALJ further found that although Morgan and Bucks executed a domestic partnership declaration in July 2010, the document was irrelevant to Plaintiffs' FIB and CIB applications because a domestic partnership and a marriage are "considered separate and distinct legal relationships under California law." (*Id.* (*citing* 20 CFR 404.344, 404.345 and Cal. Fam. C. sections 300-310 and 297-297.5).)   To be

recognized under California law, a "registered domestic partnership" must be registered with the California Secretary of State.   Morgan and Bucks' domestic partnership document was submitted to the Department of Fire and Police Pensions in the City of Los Angeles. Morgan and Bucks never registered with the California Secretary of State. The ALJ also determined that none of the exceptions listed in 20 CFR 404.334(a) (2) that might entitle Morgan to FIB based on a marriage of less than 9 months apply here. (A.R. 80.)  Bucks' death did not qualify as "accidental" within the meaning of the regulation because her death from cancer, while certainly unexpected at the time she and Gary married, was not the result of  "bodily injuries received from violent and external causes."  (*Id.*)

In addition, with respect to Mackenzie and Connor's claim for CIB, the ALJ found Gary's reliance on Acquiescence Rule 86-12(9) "misplaced" because "the Social Security Administration has never denied that Mackenzie and Connor were the insured wage earner's stepchildren.  However they were clearly not the insured wage earner's stepchildren for at least nine months prior to her death, and therefore do not satisfy the applicable durational requirement in this situation." (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citations omitted).  "Even when the evidence is susceptible to more than one

rational interpretation, [reviewing courts] uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  The Court will also not reverse the Commissioner's decision "[w]here evidence is susceptible to more than one rational interpretation," even if it were to disagree with the ALJ's conclusions. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Although this Court cannot substitute its discretion for that of the ALJ, it must nonetheless review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  However, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006).)

//

//

//

## DISPUTED ISSUES

Plaintiffs challenge the Commissioner's decision, raising   the following five issues, whether:

(1) The ALJ properly considered Plaintiffs' status as Dawne Bucks' stepchildren in determining their eligibility for CIB;

(2) The ALJ properly considered the Domestic Partnership of Morgan and Dawne Bucks in determining Morgan's application for FIB;

(3) The ALJ properly developed the record and issued a legally insufficient decision;

(4) Plaintiffs were denied their rights of due process; and

(5) Remand is appropriate pursuant to 42 U.S.C. § 405(g) based on a showing of new evidence.

For the following reasons, the Court finds that the ALJ did not err her determination that Mackenzie and Connor Morgan are not entitled to Child Insurance Benefits as Bucks' stepchildren, and Morgan is not entitled to Father's Insurance Benefits because the Morgan/Bucks' married failed to meet the durational requirement necessary for Plaintiffs to receive such benefits.   Accordingly, while the circumstances of this case are unfortunate, the ALJ's decision is free of legal error and must be affirmed.

**DISCUSSION**

**1.  The ALJ Properly Considered the Status of Mackenzie and Connor Morgan under California Law as Stepchildren of Dawne Bucks.**

Plaintiffs argue that the ALJ did not give proper consideration to Mackenzie's and Connor's status as Bucks' stepchildren in concluding that the children were not eligible to receive CIB.  (Joint Stip. at 4-8.)  Defendant responds that under the Act, Mackenzie and Connor could only be eligible for CIB if they had been stepchildren "not less than nine months immediately preceding the day on which [the insured] individual died."  (Joint Stip. at 8, (*citing* Soc. Sec. Act § 216(e) (2); 42 U.S.C. § 416(e)(2)).)  Defendant's analysis is correct.

Plaintiffs concede that stepchildren are only entitled to CIB if the criteria of 20 C.F.R. 404.340(a)(1)-(5) are satisfied. (Joint Stip. at 4.)  However, 20 C.F.R. § 404.357 also requires that to receive survivor benefits, such children must have been "stepchildren" of the insured for at least nine months prior to the insured's death. Plaintiffs argue that even though Morgan and Bucks were not married until August 6, 2011 (A.R. 208) and she died on October 29, 2011 (A.R. 225), Mackenzie and Connor should qualify for CIB as stepchildren within the meaning of 20 C.R.F. 404.350 based on the 15 month period after Morgan and Dawn submitted a domestic partnership declaration to Morgan's LAFD pension plan in July 2010.  In support of their argument, Plaintiffs rely on broad principles outlined in California's Uniform Parentage Act ("UPA") and the Agency's Acquiescence Ruling  86-12(9) ("AR 86-12(9)").  (Joint Stip. at 5-8.)  In so doing, however, Plaintiffs wholly ignore more specific California law governing how parent-child relationships are established, as

9

well as California's statutory requirements for establishing a registered domestic partnership.

As an initial matter, AR 86-12(9) does not, as Plaintiffs appear to believe, mandate that Mackenzie and Connor are entitled to CIB benefits.  (*See* Joint Stip. at 4.) The ruling rests on the Ninth Circuit's holding in *Hutcheson v. Califa,* 638 F.2d 96 (9th Cir. 1981) and provides that because the term "stepchild" is not specifically defined in the Social Security Act, the definition of "stepchild" is governed by State law.   AR 86-12(9).   California law does not recognize an automatic parental relationship between a parent and stepchildren.   While an adopted child and their adoptive parents are accorded the legal relation of parent and child under California law, "no such fundamental bond is recognized, on the other hand, in the stepparent-stepchild relationship."  *In re Jodi B*., 227 Cal. App. 3d 1322, 1328 (1991).[4]  Thus, the ALJ correctly found that Plaintiffs' reliance on AR 86-12(9) is misplaced.

The issue here for the purpose of entitlement to CIB was not whether Mackenzie and Connor were Bucks' stepchildren when she died.  In fact, the ALJ noted that "the Social Security Administration has never denied that Mackenzie and Connor were the insured wage earner's stepchildren." (A.R. 73.)   But, the  ALJ went on to explain, under Social Security regulations, unless one of the exceptions applies, stepchildren may only receive CIB if they were stepchildren of the insured for at least nine months before the insured's death.  (*Id.*) Based on Morgan and Bucks' marriage of less than three months before her death from cancer, Mackenzie and Conner were not Bucks' stepchildren for at least nine months before she died.

---

[4] California law defines a "natural parent" as a "nonadoptive parent  . . . whether biologically related to the child or not." Cal. Fam. Code § 7601(a).   The statute also defines the "parent and child relationship to mean "the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations."  (Cal. Fam. Code § 7601(b).   The law "does not preclude a finding that a child has a parent and child relationship with more than two parents."  (Cal. Fam. Code § 7601(c).)

1    Accordingly, the Court finds that the ALJ's decision regarding Mackenzie and

2    Connor's ineligibility for CIB and, therefore, Morgan's ineligibility for FIB is free of

3    legal error and supported by substantial evidence.

4

5    **2.  The ALJ Did Not Err in Evaluating Morgan's and Bucks' Domestic**

6    **Partnership.**

7

8    Plaintiffs argue that the appropriate time frame for the commencement of

9    Plaintiffs' status as "stepchildren" should be measured from July 2010, when Gary

10   Morgan and Bucks signed a declaration of domestic partnership with the Los Angeles

11   Department of Fire and Police Pensions. (Joint Stip. at 6; *see also* A.R. at 140

12   (Declaration of Domestic Partnership).)    While this document may have been

13   sufficient to assure Bucks' entitlement to benefits under Morgan's LAFD pension plan,

14   it did not establish a registered domestic partnership with the State of California.

15   California law requires that "[a] domestic partnership shall be established in California

16   when both persons file a Declaration of Domestic Partnership with the Secretary of

17   state pursuant to this division . . . [.]" Cal. Fam. Code § 297 (b); (*see also* A.R. at 60.)

18

19   Social Security Administration Program Operations Manual ("POMS")[5]

20   recognizes that a stepchild relationship may arise from same sex relationships and non-

21   marital legal relationships ("NMLRs").  POMS GN 00210.001.  Under this provision,

22   a claimant is recognized as a stepchild of the wage earner if the wage earner and the

23   claimant's parent entered into either a valid marriage or an NMLR, but the NMLR

24   must be valid under the applicable state law.    POMS GN 00210.004.    California's

25   Domestic Partner Rights and Responsibilities Act confers certain rights, including

26   rights of inheritance on  domestic partners, but only if the domestic partnerships is

27

28   _____

[5] The Social Security Administration website describes POMS as "a primary source of information used by Social Security employees to process claims for Social Security benefits." *See*  https://secure.ssa.gov/poms.nsf/home!readform.

11

registered with the California Secretary of State after January 1, 2001.  Cal. Fam. C. § 299.3.  Courts have upheld that registration is a prerequisite to pursuing domestic partnership rights under California law and domestic partnerships registered with city or county agencies do not confer the benefits afforded under state law.  *Valez v. Smith,* 142 Cal. App. 4th 1154, 1167 (2006).

Plaintiffs do not dispute that Morgan and Bucks never filed any documents with the California Secretary of State for a registered domestic partnership, but only submitted a declaration in connection with Morgan's LAFD pension benefits.  (A.R. 24, 140.)   In fact, Morgan and Bucks were precluded by statute from registering their relationship as a domestic partnership.  In California, registered domestic partnerships are only permitted between persons of the same sex, or between persons of the opposite sex when "one or both of the persons are over the age of 62."  Cal. Fam. Code § 297 (b) (5).   Morgan and Bucks did not meet either of these requirements.   Bucks was only 50 years old when she died (*see* A.R. 52) and at the hearing, Morgan testified that he was 60 years old  (A.R. at 223).   Indeed, Plaintiffs concede the "flaws in the July 28, 2010 domestic partnership."  (Joint Stip. 16.)

Nevertheless, Morgan asserts that because "[he] and their children lived together as a family for nearly two years[,] [t]he requisite stepchild-stepparent relationships were formed well before Ms. Bucks['] passing, thereby satisfying the durational requirement."  (A.R. at 214.)  Unfortunately, as the ALJ explained in her decision, entitlement to survivor benefits for stepchildren is determined by the express provisions of Social Security regulation 20 C.F.R. 404.357, not by the total amount of time that the wage earner and the children's natural parent may have resided together as a family while supporting the children.  The regulation unequivocally provides that a stepchild relationship arises based on a valid marriage under State law or a marriage which would be valid except for a legal impediment" and except in the case of the

12

wage-earner's accidental death, the stepchild-stepparent relationship must exist for at least nine months before the insured step parent's death for a stepchild to qualify for CIB.[6]   20 C.R.F. 404.357.

Consequently, the ALJ did not err in finding that the only relevant time frame for the durational requirement in assessing Plaintiffs' eligibility for CIB and FIB was the tragically short duration of Morgan and Bucks' marriage, i.e. August 6, 2011 – October 29, 2011, less than three months.

Accordingly, while the Court recognizes the result that flows from the application of these legal rules may seem harsh to Plaintiffs, the Court finds the ALJ did not err in evaluating Morgan and Bucks' domestic partnership status as it relates to Plaintiffs' eligibility for survivor benefits and the decision is supported by substantial evidence.

## 3. The ALJ Properly Developed the Record and Her Decision is Legally Sufficient.

Plaintiffs concede that "the durational requirement for all plaintiffs is the sole issue[]" in regards to the CIB/FIB eligibility determination.  (Joint Stip. at 26.)   Still, they contend that in making the adverse eligibility decision, the ALJ failed to

---

[6] California law does not recognize common law marriage. *Menchaca v. Farmers Ins. Exch.,* 59 Cal. App. 3d 117, 128 (1976) ("In California, the common-law marriage is not recognized[.].");  *see also Elden v. Sheldon,* 46 Cal.3d 267, 275 (1988).  However, California does recognize a "putative spouse"  in circumstances where a marriage is void or voidable and the couple believed in good faith that their marriage was valid. Cal. Fam. C. § 2251; *see also Ceja v. Rudolph & Sletten, Inc*., 56 Cal.4th 1113, 1122 (2013). The doctrine is inapplicable here, where the record clearly establishes that Morgan and Bucks knew they were not legally married in 2010 because they executed the declaration of domestic partnership with the LAFD and Morgan admitted that they postponed their initial wedding date. (A.R. 24.) Nor is there any evidence that before their actual marriage on August 6, 2011, the couple "went through a marriage ceremony . . .  that would have resulted in a valid marriage except for a legal impediment."  20 C.F.R. § 404.346.

13

adequately develop the record and make findings "in accordance with the Act, agency regulations, rulings and policy." (Joint Stip. at 23.) Defendant responds that the "ALJ properly disregarded the declaration of domestic partnership filed with the Los Angeles Department of Fire and Police Pensions." (Joint Stip. at 25.)

The Ninth Circuit has held that "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard Ex Rel. Wolff v. Barnhart*, 341 F. 3d 1006, 1012 (9th Cir. 2003) (citing *Black v. Apfel*, 143 F.3ds 383, 386 (8th Cir. 1998).) The ALJ "is not required to discuss evidence that is neither significant nor probative." (*Id.*) Here, the ALJ properly disregarded the LAFD declaration of domestic partnership because it did not establish that Plaintiffs satisfied the durational requirements to be entitled to benefits since Mackenzie and Connor were not Bucks' stepchildren for at least nine months prior to her death. (A.R. 80.)

As discussed above, Morgan and Bucks did not register as a domestic partnership with the California Secretary of State, nor could they because under the California statute, registered domestic partnerships are recognized only between same-sex couples or, in the case of heterosexual couples, where one partner is age 62 or older. *See* Cal. Fam. Code § 297 (b) (5). Thus, the only time frame relevant for the ALJ's eligibility analysis is the very brief period of the Morgan/Bucks marriage: August 6, 2011 to October 29, 2011, just under three months.

In the Joint Stipulation and in a supplemental briefing submitted to the Appeals Council in May 2014, Plaintiffs argue that the United States Supreme Court's decision in *United States v. Windsor*, ___ U.S. ___, 133 S. Ct. 2675 (2013) provides a legal basis to find Plaintiffs eligible for survivor benefits. (*See* A.R. 210.) Plaintiffs' argument that *Windsor* "directly affects [the Morgans'] appeal" is misguided. (A.R.

213.)  The Supreme Court's ruling in *Windsor* declaring Section 3 of the Defense of Marriage Act unconstitutional is irrelevant here.  Nothing in *Windsor* pertains to the duration of a stepchild-stepparent relationship for purposes of determining a stepchild's eligibility for survivor's benefits.   Accordingly, the ALJ did not err in failing to consider *Windsor* in her determination that Plaintiffs did not meet the eligibility requirements under Agency regulations for CIB and FIB.

Plaintiffs also contend that the ALJ erred in failing to consider Morgan's status as a widower during their period as domestic partners under the rules of intestate succession pursuant to California Probate Code Section 6401.  (Joint Stip. at 20, 23.) These succession rules are inapplicable and irrelevant to the Social Security eligibility determinations at issue.  While the Probate Code provides that California's rules of intestate succession apply equally to spouses and domestic partners, the Probate Code does not in any way abrogate the requirements of California Family Code § 297(b)(5) for the formation of a valid registered domestic partnership in California.  Morgan and Bucks were ineligible under California law to register for a domestic partnership.

Consequently, the Court  that the ALJ adequately developed the record with respect to the eligibility determination and the decision is without legal error.

### 4.  Plaintiffs Were Not Denied Due Process.

Plaintiffs also contend that they were denied a fair judicial proceeding in violation of the Due Process Clause of the Fifth Amendment.  (Joint Stip.  at 27.) Specifically,  Plaintiffs argue, based on the same reasoning and authorities offered on their previous issues, that the ALJ's "insufficient reasoning and a misinterpretation of California domestic partnership law . . . resulted in a deprivation of Plaintiffs' Due Process Rights."  (*Id.* at 29.)    However, as discussed above, the Court finds no error

in the ALJ's determination that Plaintiffs' reliance on the AR   86-12(9) was "misplaced."   The Acquiescence Ruling  did not change California law with respect to the stepchild-stepparent relationships; did not curtail the nine month duration requirement to make Mackenzie and Connor eligible for CIB and Morgan, as a result, eligible for FIB,   under Agency regulations; and did not change any of the requirements under California law to establish a registered domestic partnership.

Plaintiffs also assert that the decision should be reversed and remanded because of alleged personal bias by the ALJ.  (A.R. 30-31.)  But Plaintiffs point to no evidence in the record that demonstrates  bias or prejudice on the ALJ's part.   Morgan attended the hearing on September 24, 2012 without a representative.  At the outset of the hearing, the ALJ asked Morgan if he wished "to have additional time if you want to try and secure a representative."  (A.R. 221.)   Morgan indicated that he had "made numerous attempts" to secure counsel but found it difficult in a case that did not involve disability. (A.R. 221.)   The ALJ then noted "Well, you know, the other issue, sir, is that you have to have a prospect of being successful.  And in your case, you're filing for children's benefits where there was no biological relationship.  So they're not entitled to your wife's benefits." (A.R. 222.)  Still, the ALJ allowed Morgan to present his position on the issue of his children's eligibility as stepchildren, including references to "the *Hutchinson* case in AR 86-12(9)," and "general federal common law relating to family relationships."   (*Id.*)   The ALJ pointed out that Morgan's interpretation of the regulations was incorrect. (A.R. 223.)

Plaintiffs assert that the ALJ did not allow Morgan to present his position.  The record does not support this assertion.  The ALJ was careful to confirm that Morgan wished to proceed without representation, she questioned Morgan regarding his relationship with Bucks, and allowed Morgan to present his view, albeit incorrect, on why he believed his children should be entitled to CIB. (A.R. 218-31.)  Moreover, she

explained on the record in detail why Plaintiffs did not meet the eligibility requirements. (A.R. 223-25.) Morgan brought additional documents to the hearing that he believed supported his and his children's applications for survivor benefits. (A.R. at 228.) The ALJ received the documents and added them to the record as exhibits. (A.R. 231.) While the hearing was brief and the ALJ issued her decision just three days after the hearing, the Court finds no evidence of personal bias or prejudice in the record.[7]

### 5.  Remand is Not Warranted Under Sentence Six of Section 405(g).

Plaintiffs' final argument is that remand is warranted under sentence six of 42 U.S.C. § 405(g) because of a showing of new evidence.  (Joint Stip. at 343-36.) Plaintiffs point to the U.S. Supreme Court decisions in *Windsor* and *Obergefell v. Hodges*, __U.S. __, 135 S. Ct. 2071 (2015), and Social Security Administration policy changes under POMS GN 00305.005, and POMS GN 00210.505 that Plaintiffs contend "may affect the outcome of this case." (Joint Stip. at 34-35.)    Defendants respond that a sentence six remand  is not appropriate where there is merely a change of law and Plaintiffs do not cite any new evidence that is material to the durational question at the heart of this case. (*Id.* at 37.)  The Court agrees.

Sentence six of 42 U.S.C. § 405(g) provides that :

---

[7] It is difficult to discern tone from a written transcript, but  it seems to the Court  that the ALJ may have grown somewhat impatient with Morgan's questions and his repeated efforts to argue points directly contrary to the governing regulations. (*See, e.g.,* A.R. 226 (exchange where Morgan is describing events leading up to Bucks' cancer diagnosis and the ALJ responds "Sir, just tell me about the death."); 229 (Morgan asks for further explanation of why Bucks' death did not fall into the "accidental" exception to the nine-month rule about marriage and the ALJ responds: "No sir. I'm not here to make—to explain.  My position is to make a decision., sir. I'll take everything you say into consideration, but I don't advise.")) Even so, there is nothing in the record to suggest that the ALJ's adverse decision regarding Plaintiffs' eligibility is based on anything other than an accurate application of the law and agency policies and regulations to the facts of the case.

1
2
3
4
> The court may,[] …. at any time order additional evidence to be taken
> before the [Commissioner], but only upon a showing that there is new
> <u>evidence</u> which is material and that there is good cause for the failure to
> incorporate such evidence into the record in a prior proceeding[.]

5
6
42 U.S.C. § 405(g) (emphasis added).

7
8
9
10
11
12
13
14
15
16

Subsequent to the ALJ's September 2012 adverse decision in this case, and in response to the *Windsor* decision, the Social Security Administration adopted new guidelines governing "when entitlement to benefits as a stepchild depend on the [insured's] same-sex marriage or [NMLR] with the child's parent or adoptive parent." POMS GN 00210.505. In the case of an NMLR, the guidelines direct agency personnel to consult GN 00210.004 , which in turn advises that "to determine if a claimant's NMLR is recognized for benefit purposes, you must determine that the NMLR[] <u>was valid in the state where it was established</u>." POMS GN 00210.004(C) (emphasis added). [8] Thus, the newly enacted guidelines are not helpful to Plaintiffs

17
18
19
20
21
22
23
because they did not change California law with respect to the State's requirements for registered domestic partnerships. Nor do they change the durational requirements for entitlement to CIB benefits. In fact, the guidelines expressly specify that in the case of NMLRs, to obtain child's benefits based on a stepchild relationship, "The parent and stepparent of a child filing for stepchild benefits must meet the nine-month duration of marriage requirement if the [stepparent] is deceased[.]" POMS GN 00210.004(E)(1)(b).

24
25
26
Plaintiffs do not present any new evidence that establishes that Mackenzie and Connor were stepchildren within the Social Security Administration regulations for at

27
28
[8] Available at www.https://secure.ssa.gov/apps10/poms.nsf/lnx/020021000.

18

least nine months before Bucks' death.  Subsequent changes in agency policies and guidelines pertaining to NMLRs, and the U.S. Supreme Court's decisions concerning same-sex marriage and non-marital relationships do not cure this fatal flaw in Plaintiffs' applications for survivor benefits.

For all the reasons discussed above, the Court finds no legal error in the ALJ determination and that the decision is supported by substantial evidence.  On that basis, remand is not warranted.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiffs and for Defendant.

LET JUDGEMENT BE ENTERED ACCORDINGLY.

DATED: May 12, 2016

_____
      KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

19